IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA :
:
v. : 1:12CR456-1
:
SASSAN BASSIRI :

The United States Attorney charges:

COUNT ONE

1. At all times material herein:

A. SASSAN BASSIRI was a licensed dentist in North Carolina.

B. SASSAN BASSIRI practiced under the name Sassan Bassiri, D.D.S., P.A., and King Family Dentistry at 642 S. Main Street, King, North Carolina, from about September 2003, until September 2008, and 226 Kirby Road, King, North Carolina from about October 2008, until May 2011.

MEDICAID PROGRAM

C. The Medicaid Program was enacted by Congress on July 30, 1965, under Title XIX of the Social Security Act. The Medicaid Act, Title 42, United States Code, Section 1396, et seq., established the Medicaid program which provided medical insurance for individuals whose incomes were insufficient to meet the costs of necessary medical expenses, including children and disabled individuals. The Medicaid program

covered, among other things, the cost of certain dental services.

D. The Medicaid program in the State of North Carolina was administered by the Division of Medical Assistance (DMA) of the North Carolina Department of Health and Human Services. A substantial portion of the DMA budget was funded by the United States Department of Health and Human Services.

E. Providers furnishing medical services to Medicaid patients filed requests for reimbursement electronically or by means of paper claims.

F. Once the Medicaid program had received and adjudicated the claim, payment was made by check mailed to the provider's address. In the alternative, certain providers were paid electronically by the wiring of funds directly to the provider's designated bank account.

G. The Medicaid program provided dental services, including the provision of partial and full dentures.

H. The Medicaid program required a participating dentist to describe the service rendered by using the current dental terminology codes (CDT) published by the American Dental Association on claims forms. The CDT procedure code was designed to provide a common classification of services for dental health care providers.

I. CDT code D-5211 described a resin-based partial denture for the upper palate, including any conventional clasps, rests, and teeth. A resin-based partial denture was made from a acrylic material which was used when any number of natural teeth still existed in the upper palate. The Medicaid program reimbursed dentists at a lower rate for resin-based partial dentures than cast metal partial dentures.

J. CDT code D-5212 described a resin-based partial denture for the lower palate, including any conventional clasps, rests, and teeth. A resin-based partial denture was made from a acrylic material which was used when any number of natural teeth still existed in the lower palate. The Medicaid program reimbursed dentists at a lower rate for resin-based partial dentures than cast metal partial dentures.

K. CDT code D-5213 described a cast metal partial denture for the upper palate, including any conventional clasps, rests, and teeth. A cast metal partial denture was made from a durable metal alloy which was used when any number of natural teeth still existed in the upper palate. The Medicaid program reimbursed dentists at a higher rate for cast metal partial dentures than resin-based or acrylic partial dentures.

L. CDT code D-5214 described a cast metal partial denture for the lower palate, including any conventional clasps, rests, and teeth. A cast metal partial denture was made from a durable metal alloy which was used when any number of natural teeth still existed in the lower palate. The Medicaid program reimbursed dentists at a higher rate for cast metal partial dentures than resin-based or acrylic partial dentures.

M. CDT code D-5820 described a temporary or interim partial denture for the upper palate. A temporary or interim partial denture was made from a resin-based material which was used when typically only one or two natural teeth had been extracted from the upper palate. The Medicaid program did not reimburse dentists for temporary or interim partial dentures.

N. CDT code D-5821 described a temporary or interim partial denture for the lower palate. A temporary or interim partial denture was made from a resin-based material which was used when typically only one or two natural teeth had been extracted from the lower palate. The Medicaid program did not reimburse dentists for temporary or interim partial dentures.

O. Medicaid program rules through Clinical Coverage Policy 4A, required dentists to submit prior approval requests to the Medicaid program before providing partial dentures to patients.

P. Medicaid Clinical Coverage Policy 4A set out criteria for determining eligibility of a Medicaid recipient to obtain a partial denture. The Medicaid policy stated that for adult Medicaid recipients to be eligible for a partial denture, they must have met one of the following criteria:

   i. Any missing anterior teeth (incisors or canines);

   ii. Four (4) missing posterior permanent teeth in an arch;

   iii. Three (3) adjacent missing posterior permanent teeth in an arch.

Q. Medicaid Clinical Coverage Policy 4A required dentists to use the date of delivery for a partial denture as the date of service when requesting payment, whether the partial denture was made of cast metal or resin-based. Medicaid Clinical Coverage Policy 4A, Section 8.5.6, also set out procedures for billing for non-deliverable partial and complete dentures.

R. CDT code D-0160 described a detailed and extensive problem focused evaluation entailing extensive diagnostic and cognitive modalities based on the findings of a comprehensive oral evaluation. The Medicaid program reimbursed dentists at a higher rate for detailed and extensive oral evaluations than for other periodic or limited oral evaluations.

5

S. The Medicaid program did not reimburse dentists for office visits including D-0160 coded services in conjunction with the placement of full or partial dentures, such as taking amalgamate impressions of the mouth, trying-in the full or partial denture, or delivering the full or partial denture to the patient.

T. The Medicaid program reimbursement for full and partial dentures included routine post-delivery care, including any necessary adjustments and relines, for six (6) months after the date of delivery.

2. During the period January 1, 2007, continuing up to and including on or about January 31, 2011, the exact dates unknown, in the County of Stokes, in the Middle District of North Carolina, SASSAN BASSIRI did knowingly and willfully execute and attempt to execute a scheme and artifice to obtain by means of materially false and fraudulent pretenses and representations, money and property in the approximate amount of $70,000, owned by and under the custody and control of health care benefit programs affecting commerce, that is, Medicaid, in connection with the delivery and payment for health care benefits, items and services.

6

## OBJECT OF SCHEME

3. It was the object of the scheme for SASSAN BASSIRI to knowingly submit claims to the Medicaid program containing materially false information in order to fraudulently obtain funds from the Medicaid program in connection with the delivery of and payment for health care benefits.

## MANNER AND MEANS

4. It was a part of the scheme to obtain money by means of false and fraudulent representations that SASSAN BASSIRI would and did submit false prior approval requests to the Medicaid program requesting approval to provide cast metal partial dentures to patients when in fact SASSAN BASSIRI would provide resin-based partial dentures.

5. It was part of the scheme to obtain money by means of false and fraudulent representations that SASSAN BASSIRI would and did submit reimbursement claims to the Medicaid program for cast metal partial dentures when in fact SASSAN BASSIRI provided resin-based partial dentures.

6. It was a part of the scheme to obtain money by means of false and fraudulent representations that SASSAN BASSIRI would and did submit false prior approval requests to the Medicaid program requesting approval to provide cast metal

partial dentures to patients when in fact SASSAN BASSIRI would provide non-reimbursable temporary or interim partial dentures.

7. It was part of the scheme to obtain money by means of false and fraudulent representations that SASSAN BASSIRI would and did submit reimbursement claims to the Medicaid program for cast metal partial dentures when in fact SASSAN BASSIRI provided non-reimbursable temporary or interim partial dentures.

8. It was a part of the scheme to obtain money by means of false and fraudulent representations that SASSAN BASSIRI would and did submit false prior approval requests to the Medicaid program requesting approval to provide resin-based partial dentures to patients when in fact SASSAN BASSIRI would provide non-reimbursable temporary or interim partial dentures.

9. It was part of the scheme to obtain money by means of false and fraudulent representations that SASSAN BASSIRI would and did submit reimbursement claims to the Medicaid program for resin-based partial dentures when in fact SASSAN BASSIRI provided non-reimbursable temporary or interim partial dentures.

10. It was part of the scheme to obtain money by means of false and fraudulent representations that SASSAN BASSIRI would and did submit reimbursement claims to the Medicaid program for detailed and extensive oral evaluations, using CDT code D-0160, in connection with the steps required for full or partial

dentures, such as impressions, try-ins, and delivery, which were ordinarily considered to be inclusive in the reimbursement rate for the full or partial denture.

EXECUTION

On or about January 15, 2008, in the County of Stokes, in the Middle District of North Carolina, SASSAN BASSIRI did knowingly and willfully execute and attempt to execute a scheme and artifice to obtain, by means of materially false and fraudulent pretenses and representations, money and property owned by and under the custody and control of a health care benefit program affecting commerce, that is, the Medicaid program, in connection with the delivery of and payment for health care benefits, items and services by submitting and causing to be submitted a claim for allegedly providing cast metal partial dentures for patient R.A. on or about January 15, 2008, when in fact acrylic partial dentures were actually provided, causing an approximate loss of $404.74 to the Medicaid program; in violation of Title 18, United States Code, Sections 1347(2) and 2.

COUNT TWO

1. Paragraphs 1 through 10 are incorporated herein by references as if fully set forth herein.

2. From on or about February 26, 2008, to on or about June 26, 2008, in the County of Stokes, in the Middle District of North Carolina, SASSAN BASSIRI did knowingly and willfully execute and attempt to execute a scheme and artifice to obtain, by means of materially false and fraudulent pretenses and representations, money and property owned by and under the custody and control of a health care benefit program affecting commerce, that is, the Medicaid program, in connection with the delivery of and payment for health care benefits, items and services by submitting and causing to be submitted nine (9) claims for allegedly providing detailed and extensive oral evaluations, using CDT code D-0160, in connection with the steps required for providing complete and partial dentures, such as impressions, try-ins, delivery, and adjustments, which are considered to be inclusive in the reimbursement rate for the complete and partial dentures for patient P.C. between February 26, 2008 and June 26, 2008, when in fact patient P.C. did not receive nine (9) detailed and extensive oral evaluations, causing an approximate loss of $507.60 to the Medicaid program; in violation of Title 18, United States Code, Sections 1347(2) and 2.

## COUNT THREE

1. Paragraphs 1 through 10 are incorporated herein by references as if fully set forth herein.

2. On or about June 18, 2010, in the County of Stokes, in the Middle District of North Carolina, SASSAN BASSIRI did knowingly and willfully execute and attempt to execute a scheme and artifice to obtain, by means of materially false and fraudulent pretenses and representations, money and property owned by and under the custody and control of a health care benefit program affecting commerce, that is, the Medicaid program, in connection with the delivery of and payment for health care benefits, items and services by submitting and causing to be submitted a claim for allegedly providing a cast metal partial denture for patient R.H. on or about June 18, 2010, when in fact a non-reimbursable temporary or interim partial denture was actually provided, causing an approximate

loss of $623.92 to the Medicaid program; in violation of Title 18, United States Code, Sections 1347(2) and 2.

*Laura Lansford* (RmH)
LAURA LANSFORD
Special Assistant
United States Attorney

*Rm Hamilton*
ROBERT M. HAMILTON
ASSISTANT UNITED STATES ATTORNEY

*Ripley Rand*
RIPLEY RAND
UNITED STATES ATTORNEY